UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| JAMES W. BRYANT | * | CIVIL ACTION NO.  09-1499 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

James W. Bryant protectively filed the instant application for Title XVI Supplemental Security Income payments on March 7, 2007.  (Tr. 79-81).  He alleged disability since December 15, 2002, because of diabetes, heart attack, asthma, sleep apnea, high blood pressure, and back problems.  (Tr. 86, 90).[1]  The claim was denied at the initial stage of the administrative process. (Tr. 55-59).  Thereafter, Bryant requested and received a July 9, 2008, hearing before an Administrative Law Judge ("ALJ").  (Tr. 16-39).  However, in a January 8, 2009, written decision, the ALJ determined that Bryant was not disabled under the Act, finding at Step Four of

---

[1] A prior application was denied by an Administrative Law Judge on May 10, 2006.  (Tr. 40-51).

the sequential evaluation process that he was able to return to his past relevant work as a garage supervisor. (Tr. 6-15). Bryant appealed the adverse decision to the Appeals Council. On July 8, 2009, however, the Appeals Council denied Bryant's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On August 27, 2009, Bryant sought review before this court. He alleges the following errors,

(1) the ALJ's residual functional capacity assessment is not supported by substantial evidence; and

(2) the ALJ's Step Four determination that plaintiff can return to his past relevant work is not supported by substantial evidence.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)  If an individual's residual functional capacity is such that he or she can

>   still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Bryant did not engage in substantial gainful activity during the relevant period. (Tr. 11). At Step Two, he found that he suffers severe impairments of diabetes, arterial hypertension, history of old anterior myocardial infarction, generalized osteoarthritis of the lumbar spine, Dupuytren's contractures, degenerative disc disease, chronic obstructive lung disease, and drug abuse (in remission). *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. *Id*.

II. **Residual Functional Capacity**

The ALJ next determined that Bryant retains the residual functional capacity to perform light work, reduced by the ability to only frequently reach, handle, and finger. (Tr. 11).[2]

It is not disputed that plaintiff suffers from Dupuytren's contractures[3] – an impairment that affects his ability to manipulate his fingers. Rather, plaintiff contests the sufficiency of the ALJ's determination that the foregoing impairment only reduces his ability to reach, handle, and

---

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[3] As explained in plaintiff's brief,
Dupuytren's contracture is "[c]ontracture of palmar fascia usually causing the ring and little fingers to bend into the palm so that they cannot be extended . . . The cause is unknown." *Taber's Cyclopedic Medical Dictionary*, 584 18th ed.1997). "This autosomal dominant condition . . . occurs more commonly in patients with diabetes, alcoholism, or epilepsy." *The Merck Manual*, 491 (17th ed. 1999). "Eventually the contracture worsens, and the hand becomes arched. The disease occasionally is associated with fibrous thickening of the dorsum of the PIP joints . . . and rarely nodules on the plantar surface of the feet . . . ." *Id*. "The PIP joint is particularly recalcitrant to correction . . . ." *Id*.
(Pl. Brief, pg. 5, n3).

finger to a "frequent"[4] basis.[5] In this regard, the court observes that the only medical source who documented and attempted to quantify the extent of functional loss caused by plaintiff's Dupuytren's contractures was the consultative examiner, David Hebert, M.D. pursuant to his April 16, 2007, consultative examination. (Tr. 134-137).

During the physical examination, Bryant reported a past history of heart disease, asthma, frequent angina, diabetes mellitus, and chronic low back pain. *Id.* Old records indicated that he tested positive for cocaine use in October 2002, although he denied ever taking drugs. *Id.* His lungs were 1+ for wheezes and 1+ for ronchi, and he smelled heavily of tobacco smoke. *Id.* He exhibited a full range of motion of the lumbar spine, with a negative straight leg raise. *Id.* His gait and station were completely normal, and he demonstrated no difficulty with routine ambulation. *Id.* All joints had a full range of motion except for the fingers and hands. *Id.* Both hands had Dupuytren's contractures of the 4th and 5th fingers, with only about 1/3 of the normal range of motion in the 3rd and 4th fingers, but with hand grip still quite good. *Id.* He also exhibited Dupuytren's contractures controlling the 4th and 5th toes in the right foot, but he walked quite well without difficulty. *Id.* He exhibited no motor or sensory deficits. *Id.* X-rays of the lumbar spine were abnormal, with mild generalized osteoarthritis and degenerative disc disease at the L4-L5 disc space. *Id.* Hebert stated that Bryant could not return to his old job as an auto mechanic because of the Dupuytren's contractures in both hands. *Id.* He noted that Bryant likely had not attempted to repair the Dupuytren's contractures, partly because the hands were still very functional. *Id.* Hebert opined that he should have no difficulty with routine walking, sitting,

---

[4] The Dictionary of Occupation Titles ("DOT") defines "frequently" as an activity or condition that exists from 1/3 to 2/3 of the time. *See* DOT, Appx. C

[5] Plaintiff does not challenge the ALJ's determination that he retained the exertional capacity for light work.

standing, carrying, and lifting for an eight hour day, as long as he was not required to lift objects more than 25 pounds. *Id.* Hebert also characterized plaintiff's Dupuytren's contractures as causing but a "mild" impairment of function of both hands. *Id.*

In his decision, the ALJ assigned "little to no weight" to Dr. Hebert's statement that plaintiff's Dupuytren's contractures prevented him from performing "auto mechanic work," at least, in part, because Hebert is not a vocational expert, and thus, is not likely to be cognizant of specific job requirements. (Tr. 13, n2). Indeed, Hebert's impression is akin to a physician's statement that a claimant is disabled or unable to work, which, under the regulations, is accorded no special significance. 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).[6]

The court further finds substantial support for the ALJ's assignment of a "frequent" limitation on plaintiff's ability to reach, handle, and finger. As recited above, Dr. Hebert documented decreased range of motion affecting solely the third through fifth digits in the hands. Stated in positive terms, there was no indication of limitation with the all-important thumbs and forefingers. Moreover, plaintiff maintained a strong grip strength. Finally, Hebert found that plaintiff's hands remained very functional, and were but mildly impaired. Under these circumstances, a limitation to "frequent" (i.e. from 1/3 to 2/3 of the time) reaching, handling, and fingering, represents a fair quantification of plaintiff's impairment that is substantially supported by the record.

Plaintiff further contends that the ALJ failed to address the drowsiness that he suffers as a result of his medication. Plaintiff points to his testimony that when he tried to return to work as a

---

[6] Moreover, the vocational expert characterized plaintiff's prior work as a garage supervisor, not an auto mechanic. *See* discussion, *infra*.

maintenance man, he fell asleep on the lawn mower. Plaintiff contends that his claim of excessive drowsiness is supported by the medical record because it contains a notation that his Flexeril medication may make him drowsy. (Tr. 230).

When assessing credibility, the ALJ is required to consider the objective medical evidence, the claimant's statements, the claimant's daily activities, and other relevant evidence. SSR 96-7p. The ALJ is also obliged to consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence. 20 C.F.R. § 404.1529(c)(4). Yet, the ALJ need not follow formalistic rules in his credibility assessment. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

In this case, the ALJ noted plaintiff's allegations of drowsiness caused by his medication. (Tr. 12). In deciding not to limit plaintiff's residual functional capacity to the extent alleged by plaintiff, the ALJ noted that his determination was supported by the findings of plaintiff's treating and examining physicians. In fact, plaintiff reported his medication, dosage, and general tiredness to Dr. Hebert, but Hebert did not document any resulting limitations of function caused by the medication. *See* Tr. 134-137.

In other words, the ALJ effectively favored the medical assessments and limitations recognized by the consultative physician to the extent that they conflicted with plaintiff's self-professed limitations. The ALJ's discussion met the requirements of 20 C.F.R. § 404.1529, and his resolution is supported by substantial evidence. *See, Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing);

*Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

**III.    Step Four**

At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that Bryant was able to return to his past relevant work as a garage supervisor, as he actually performed the job, and as the job is generally performed in the national economy. (Tr. 14-15).[7] At the hearing, the vocational expert ("VE") confirmed that in the national economy, the job of garage supervisor, DOT # 620.131-014, is performed at the light exertional level, and requires no more than frequent reaching, handling, and fingering. (Tr. 20, 22-23).

Plaintiff contends that his past relevant work, which the VE characterized as a garage supervisor, is actually a composite job that also required him to perform the medium to heavy lifting duties of an automobile mechanic. *Compare* DOT # 620.131-014 (garage supervisor) with DOT # 620.261-010 (automobile mechanic).

> According to Social Security Ruling 82-61:
>
> composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case. **For those instances where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert**.

SSR 82-61 (in pertinent part) (emphasis added).

In this case, the ALJ complied with SSR 82-61; he consulted a vocational expert who reviewed plaintiff's written job descriptions and listened to plaintiff's testimony regarding his past relevant

---

[7] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

work, but opined that his prior job was properly classified as a garage supervisor which is generally performed at the light exertional level. (Tr. 20, 23, 31, 543-545). In other words, although plaintiff could not return to his past relevant work as he actually performed it, he could perform the work as it is generally performed in the national economy.[8]

The instant record reflects an adequate basis to support the ALJ's decision to defer to the expertise of the VE. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The court emphasizes that ". . . claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey, supra*; *see also Barratt v. Astrue*, 2008 WL 2325636 (5th Cir. June 6, 2008) (unpubl.). Certainly, if plaintiff harbored any doubts concerning the VE's characterization of his prior work, plaintiff was obliged to emphasize the alleged inconsistency and to press the issue upon cross-examination. While an ALJ has a duty to make a sufficient inquiry into a claim, the claimant retains the burden to establish that he is unable to perform past relevant work. *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990) (citations omitted).

## **Conclusion**

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Bryant was not disabled under the Social Security Act, is supported by substantial evidence and is free of legal error. Accordingly,

---

[8] Plaintiff cited several cases to support his argument. To the extent that the cited cases are not otherwise distinguishable, the court observes that they are not binding precedent, i.e. decisions issued by the U.S. Court of Appeals for the Fifth Circuit or the United States Supreme Court.

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 30th day of July 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE